IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 14-cv-01692-CMA-KMT

OMAR KELLY,

    Plaintiff,

v.

WAL-MART STORES, INC.,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant Walmart Stores, Inc.'s Motion for Summary Judgment. (Doc. # 20.) Plaintiff, despite being given several extensions of time to respond to the Motion, failed to do so. As such, the Court accepts as undisputed all facts set forth in Defendant's Motion. Because Plaintiff Omar Kelly has failed to establish that a genuine issue of material fact exists as to his race discrimination, hostile work environment, and retaliatory transfer and discharge claims, the Court grants this motion.

## I.    BACKGROUND

On September 21, 2011, Walmart Store No. 966, in Cortez, Colorado, hired Plaintiff, who is African American, as an Overnight Stocker. (Doc. # 20 at 4, ¶ 9.) While working at Walmart, Plaintiff alleged that another Overnight Stocker, Anthony Morgan, subjected him to harassment due to his race. (*Id.* at 5, ¶ 14.) Specifically, Plaintiff

alleged that Mr. Morgan stated that Mr. Morgan's family was involved with the Klu Klux Klan and rode around in trucks with shotguns; referred to Plaintiff as "boy"; and told Plaintiff to get back to work—again referring to him as "boy"—and stating, "I should crack the whip like back in the slave days." (*Id.* at ¶ 15.) Plaintiff informed his manager of Mr. Morgan's actions and requested to meet with Mr. Morgan to tell him that he did not appreciate his comments. (*Id.* at 6, ¶ 16.) After this meeting, on October 29, 2011, Walmart fired Mr. Morgan. (*Id.* at ¶ 21.) In response to Walmart's 90-Day Performance Appraisal, Plaintiff wrote that Walmart is "[t]he most enjoyable working environment I've worked in." (*Id.* at 7, ¶ 22.)

Shortly thereafter, Plaintiff approached his shift-manager and requested to be transferred to a Walmart store in Denver because he thought it would be more diverse than Cortez. (*Id.* at ¶ 23–24.) Effective November 25, 2011, Walmart transferred Plaintiff to work at Store No. 2223, in Westminister, Colorado. (*Id.* at ¶ 26.) On his first day at the Westminister store, Plaintiff asked for a female associate's telephone number and texted her after work. (*Id.* at 8, ¶ 31.) The following day, Plaintiff gave the female associate a card that read:

> I would like to say thanks for being so nice and easy to talk to. If more women were like you friendships and relationships would last longer and be more healthier. I feel totaly [sic] comfortable talking to you that's why I shared some of my personal things with you. I don't know how the men were in your past, but I would be honored to wake up everyday [sic] to a woman like you. You're a Queen I only wish I could treat you like my Queen. But since you're already taken, I can only hope and pray that I find a woman like you someday. I'm a firm believer that God put people in each other [sic] lives for a reason. So maybe it was meant for me to come to Colorado, find you and find true love, maybe not but only God has that answer. P.S. I can't wait to hang out and get to know everything about you.

(*Id.* at ¶ 31.)  The female associate asked to be escorted out to her car that evening and expressed a desire to quit because she felt so uncomfortable.  (*Id.* at 9, ¶ 32.)  Walmart suspended Plaintiff pending the outcome of an investigation into the female associate's complaint.  (*Id.* at 9, ¶ 33.)

On December 8, 2011, Plaintiff filed a Charge of Discrimination against Walmart with the Equal Employment Opportunity Commission.  (*Id.* at 11, ¶ 38.)  On December 19, 2011, Walmart terminated Plaintiff's employment, stating in his exit interview that Plaintiff violated Walmart's discrimination and harassment policy by making inappropriate sexual advances on associates and customers and demonstrating aggressive behavior when those advances were not accepted.

On June 17, 2014, Plaintiff filed the instant litigation against Walmart alleging he suffered from a hostile work environment and was retaliated against and discharged due to his race.  (Doc. # 2.)  On May 13, 2015, Defendant moved for summary judgment.  (Doc. # 20.)  Plaintiff did not file a Response.[1]

## II. STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  A dispute is "genuine" if the evidence is such

---

[1] On June 21, 2015, the Court ordered that Plaintiff file a response to Defendant's Motion (Doc. # 20) by, no later than, June 24, 2015, despite it being due June 3, 2015. (Doc. # 21.) On June 26, 2015, the Court granted Plaintiff an extension—until July 24, 2015—to file a response.

that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

## III.   DISCUSSION

**A.   HOSTILE AND ABUSIVE WORK ENVIRONMENT**

Plaintiff alleges he suffered from a hostile and abusive work environment while he worked at the Cortez Walmart store, between September 23, 2011, and November 11, 2011, because Mr. Morgan, another Overnight Stocker, made racial remarks to him on three separate occasions.

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012) (internal quotation marks and citations omitted). "This includes an employee's claims of a hostile work environment based on race or national origin discrimination." *Id.* (quoting *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007)).

To survive summary judgment on a racially-hostile work environment claim, "[the plaintiff] must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and that the victim "was targeted for harassment because of [his] race or national origin." *Id.* (internal quotation marks and citation omitted). To determine whether an environment is hostile or abusive, courts review the following factors: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening

or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 957–58.

In this case, the same non-supervisory employee made the three race-based comments to Plaintiff. Although the statements were, indeed, offensive and racist, upon being informed of these remarks, Defendant took immediate action by transferring Mr. Morgan to another department and, shortly thereafter, terminating Mr. Morgan's employment. Because the Defendant took immediate, corrective action, the three statements made by Mr. Morgan did not rise to the level of pervasive or severe harassment sufficient to create a hostile work environment. *See Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412 (10th Cir. 1987) ("To establish a racially hostile work environment . . . plaintiffs must prove more than a few isolated incidents of racial enmity.") (citation omitted); *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) ("[T]here must be a steady barrage of opprobrious racial comments."). Further, Plaintiff's later admission that the Cortez store was "[t]he most enjoyable working environment I've worked in," belies his claim of a hostile work environment. In summary, Plaintiff failed to show that he was subject to a hostile work environment.

B.   DISCRIMINATORY AND RETALIATORY TRANSFER AND DISCHARGE

Plaintiff contends Walmart retaliated against him by forcing him to "express his concerns in front of the racist employee, suspend[ing] his employment in the Cortez store[,] and then transfer[ing him] to the Westminister store as a direct consequence of his complaints, and then [was] quickly wrongfully discharged . . . on a pretextual basis."

In analyzing retaliation and discriminatory discharge claims, the Court applies the three-part test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this test, a plaintiff carries the initial burden of establishing a *prima facie* case of racial discrimination. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802). Once the plaintiff has established a *prima facie* case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for its employment action." *Id.* (internal quotation marks omitted). If the defendant makes this showing, the plaintiff must show that the defendant's justification is pretextual. *Id.*

To state a *prima facie* case for unlawful retaliation, a plaintiff must show that: (1) he engaged in protected opposition to discrimination; (2) he was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1150 (10th Cir. 2008). Regarding discriminatory discharge, a plaintiff must state a *prima facie* case by showing that: (1) he belongs to a protected class; (2) he suffered an adverse employment action; and (3) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Hysten v. Burlington N. & Santa Fe R .R. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002).

In this case, although Plaintiff asserts that his transfer from the Cortez to the Westminister Walmart store constituted an adverse employment action, the undisputed facts show that Plaintiff voluntarily requested to be transferred to a store in the Denver area because "he preferred to live in a larger, more diverse, metropolitan area."

Regardless, even if Plaintiff did not request to be transferred, an involuntary lateral transfer, without more, does not constitute an adverse employment action. *See Trujillo v. New Mexico Dep't of Corr.*, No. 98-2143, 182 F.3d 933, at *3 (10th Cir. 1999) ("[A] purely lateral transfer is not an adverse employment action."). Additionally, with respect to Plaintiff's contention that Walmart engaged in an adverse employment action by forcing him to express his concerns in front of another employee, the undisputed facts indicate otherwise. Plaintiff asked to meet with Mr. Morgan to advise him that he did not appreciate Mr. Morgan's racist remarks. In any event, this conduct does not constitute an adverse employment action. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (conduct is an adverse employment action if it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"). Accordingly, Plaintiff has failed to establish a *prima facie* case of unlawful retaliation.

Finally, although Plaintiff asserts that Walmart wrongfully terminated him, Plaintiff has not presented any evidence that can give rise to the inference that Walmart based its decision to terminate him on discriminatory intent. In fact, the undisputed facts show that Plaintiff was terminated for violating Walmart's discrimination and harassment prevention policy. Accordingly, Plaintiff has failed to raise an inference of a discriminatory animus necessary to state a *prima facie* case. Therefore, the Court finds that Plaintiff fails to meet his burden under *McDonnel-Douglas* of establishing a *prima*

*facie* case of discrimination. As such, his discriminatory retaliation and discharge claims fail as a matter of law.

## IV.   CONCLUSION

Based on the foregoing, the Court ORDERS that Defendant's Motion for Summary Judgment (Doc. # 20) is GRANTED. Pursuant to Fed. R. Civ. P. 54(d)(1), the Court awards costs to Defendant. This case is DISMISSED WITH PREJUDICE.

DATED:  July 31, 2015

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge